IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MOAEC, INC.,

                                                  OPINION AND ORDER

               Plaintiff,

                                               07-cv-654-bbc

     v.

PANDORA MEDIA, INC.,
J. RIVER INC. and NAPSTER, L.L.C,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is a civil lawsuit in which plaintiff MOAEC, Inc. alleges infringement of its

United States Patents Nos. 5,969,283 (the '283 patent); 6,232,539 (the '539 patent);

6,953,886 (the '886 patent); and 7,205,471 (the '471 patent).   Of the original six

defendants only three remain:  Pandora Media, J. River, Inc. and Napster L.L.C.; all other

defendants have been dismissed.  All four of plaintiff's patents relate to a media/music

organizer and entertainment center and all four are continuations or continuations in part

of one another.

      Because the patents are so closely related, they all share some portions of the same

specification and some disputed terms.  As continuation patents, the '539 patent has the

1

same specification as the '283 patent and the '471 patent has the same specification as the '886 patent. Therefore, for efficiency and to avoid redundancy, I will refer to representative sections of the '539 patent and '471 patent unless sections from the other patents are different and particularly relevant.

Defendants filed an initial request for construction of 11 claim terms. Dkt. #120. Plaintiff did not make an initial request for claim construction, but it filed a response to defendants' proposed constructions. Dkt. #130. In a written order, I denied defendants' request for a claim construction hearing, Dkt. #141, but granted defendants' request to file a reply to plaintiff's response brief so that defendants could respond to the claim construction arguments plaintiff raised in its response brief. Plaintiff has filed a motion to file a sur-reply to defendants' reply brief. Dkt. #144. That motion will be denied. Defendants were permitted to file a reply brief because plaintiff inserted its proposed claim constructions into its response to defendants' proposed constructions instead of filing an initial claims construction brief providing proposed claim constructions. Defendants would have been prejudiced if they had not been permitted to respond to plaintiff's proposed constructions. Now that both sides have been permitted to respond to each other's proposed constructions, there is no need for a sur-reply from plaintiff. Therefore, its motion will be denied.

From the parties' briefs, the patent claims, patent specification and prosecution

history, I conclude that judicial construction of six terms is warranted.

OPINION

When construing claims, the starting point is the so-called intrinsic evidence:  the claims themselves, the patent specification and the prosecution history. Teleflex, Inc. v. Ficosa North America Corp., 299 F.3d 1313, 1325 (Fed. Cir. 2002).  Examination of the claims' language is the starting point for the well established process of claim construction. "Claim construction must adhere carefully to the precise language of the claims that the patent [examiner] has allowed." Ardisam, Inc. v. Ameristep, Inc., 336 F. Supp. 2d 867, 879 (W.D. Wis. 2004) (citing Autogiro Co. of America v. United States, 384 F.2d 391, 396 (Ct. Cl. 1967)).  The language is given its ordinary meaning as it would be understood by one of ordinary skill in the relevant art, given its context and the other patent claims.  Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001).  Moreover, district courts must remain aware that "[t]he patent applicant may not have used words consistent with the dictionary definition because an applicant can act as his or her own lexicographer or may disavow or disclaim aspects of a definition 'by using words or expression of manifest exclusion or restriction, representing a clear disavowal of claim scope.'" Ardisam, 336 F. Supp. 2d at 879-80 (quoting Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1331 (Fed. Cir. 2004)).

3

This initial construction is then considered in light of the specification to determine whether the inventor expressed a different meaning for the language, whether the preferred embodiment is consistent with the initial interpretation and whether the inventor specifically disclaimed certain subject matter. Rexnord, 274 F.3d at 1342-43. The specification contains a written description of the invention that is meant to help explain the invention and possibly define claim terms, Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995), but as a general rule, "limitations from the specification are not to be read into the claims." Golight, 355 F.3d at 1331. Finally, the interpretation is examined for consistency with the patent's prosecution history and any disclaimers made therein. Rexnord, 274 F.3d at 1343.

Last, a court may consult extrinsic evidence, such as dictionaries, treatises and expert testimony for background information and to "shed useful light on relevant art." Phillips v. AWH Corp., 415 F.3d 1303, 1317 (Fed. Cir. 2005) (internal citations omitted). In general this type of evidence is less reliable than intrinsic evidence in determining the meaning of claim terms and is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." Id. at 1318-19.

A. Disputed Terms in the '283, '539, '886 and '471 Patents

1. A storage device

4

I conclude that the term "a storage device" as used in claim 1 of all four patents means **one or more devices, such as a high-volume hard drive or other storage media, for storing electronic data**. Defendants contend that "a storage device" should receive a more limited construction that includes limiting the term to the end user's single device located in a single place. Defendants' contention is incorrect.

Defendants construe "a storage device" to be "a single device" because the language in claim 1 refers to "a" storage device and other claims refer to "the" storage device. '539 pat., col. 15, lns. 49, 59 & col. 16, lns. 2-3; '471 pat., col. 27, ln. 37. Defendants' construction fails in light of the Court of Appeals for the Federal Circuit's rule "[t]hat 'a' or 'an' can mean 'one or more' . . . ." Baldwin Graphic Systems, Inc. v. Siebert, Inc., 512 F.3d 1338, 1342 (Fed. Cir. 2008). In discussing this rule, the Federal Circuit has explained that "[t]his court has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" Id. (quoting KCJ Corp. v. Kinetic Concepts, Inc., 223 F.3d 1351, 1356 (Fed. Cir. 2000)). "The subsequent use of definite articles 'the' or 'said' in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning." Id. Here, the pertinent claim language states, "A music organizer and entertainment center *comprising*: a storage device . . . ." '539 pat., col. 15, lns. 47-47 (emphasis added). Later claim language refers to "the" storage device, '539

5

pat., col. 16, ln. 11-12, or "said" storage device, '471 pat., col. 27, ln. 59.  Therefore, under the general rule, "a storage device" can be one or more storage devices.

Although there are exceptions to this rule, "[t]he exceptions . . . are extremely limited: a patentee must 'evince[ ] a clear intent' to limit 'a' or 'an' to 'one.'"  Baldwin Graphics, 512 F.3d at 1342 (quoting KCJ Corp., 223 F.3d at 1356) (alterations in original).  Defendants contend that "a storage device" has to be "a single" storage device because the preferred embodiments of the invention all involve a single storage device, which reveals clear intent to limit "a" to "one."  The Court of Appeals for the Federal Circuit has rejected this argument.  "[A] patent claim term is not limited merely because the embodiments in the specification all contain a particular feature."  C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 865 (Fed. Cir. 2004).  The best way to practice the invention in a time when technology permits "larger amounts of music to be stored in one place," '539 pat., col. 1, lns. 33-34, may be to use a single storage device, but reading the broad claim language under the rule that "a" can mean "one or more" suggests that using a single storage device is not the only way to practice the invention.  KCJ Corp., 223 F.3d at 1356 ("[S]tanding alone, a disclosure of a preferred or exemplary embodiment encompassing a singular element does not disclaim a plural embodiment.").  Therefore, "a storage device" should not be limited to "a single" storage device.

Defendant contends that "a storage device" should be construed to be limited to one

6

location, that location being with the end user of the system, but they fail to take 35 U.S.C. § 112, ¶4 into consideration.   Under § 112, ¶4, "A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers." Claim 1 states that "a storage device" must be part of the music or media/data selection organizer and entertainment center, but the claim does not specify whether the device must be located in the same place as the center.   '283 pat., col. 213, lns. 1-8; '539 pat., col. 15, lns. 45-50; '886 pat., col. 27, lns. 47-56; '471 pat., col. 27, lns. 31-41.   Claim 6 of the '471 patent claims

> The system of claim 1 in which said storage device is located *remotely* from said user interface and said selector and further including a communication link for transmitting selected ones of said media/data selections from said remote storage device to said selector.

Col. 28, lns. 5-9.   (Emphasis added).   Dependent claim 6 claims a storage device located remotely.  If "a storage device" in claim 1 were construed to require that the storage device be located with the user's center, claim 6 would contradict the incorporated limitations of claim 1.  A storage device that must be located with the user's center cannot also be located remotely from the user's center.  Instead, "a storage device" in claim 1 should be construed broadly so as not to limit the location of the storage device.  As a dependent claim, claim 6 specifies a further limitation of the subject matter claimed in claim 1.  35 U.S.C. § 112, ¶4.

Moreover, defendants' contention about the location of a storage device fails for

another reason.  When a claim recites a general structure without limiting the structure to any specific subset, the claim term should be construed to cover all types of that structure. CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1339, 1366 (Fed. Cir. 2002).  The claim language recites "a storage device" without specifying its location.  '539 pat., col. 15, lns. 45-50.  Just as a "remote storage device," '471 pat., col. 28, lns. 8-9, is a subset of storage device, so would a storage device located with the user's center be a subset.  Because "a storage device" as used in claim 1 of all four patents refers to a general structure, the term should not be limited to any specific subset.

2. Storing compressed data defining a plurality of individual music selections and associated category flags

I conclude that the term "storing compressed data defining a plurality of individual music selections and associated category flags," and the similar terms used in claim 1 of '283 patent, claims 1 and 15 of the '539 patent and claim 1 of the '886 patent mean **storing one or more compressed music selections and associated category flags in a database**.  The parties disagree about several issues related to the term.  First, they dispute the construction of "associated category flags," but I will not address that term in this section because it will be addressed in its own section below.  Second, defendants contend that the term be construed to require storing in "a single database."  This contention is merely a restatement

of defendants' contention regarding the term "a storage device" and fails for the same reasons.

Third, plaintiff contends that the claim term should not be limited to storing data in a database because, except for claim 15 of the '539 patent, the claim language does not require storing data in a database. Plaintiff's contention is odd in light of fact that the claimed invention focuses on storing and organizing music data in a manner that permits customized playback, '539 pat., col. 1, ln. 64 - col. 2, ln. 6, and a database is nothing more than "[a] collection of data arranged for ease and speed of search and retrieval." The American Heritage Dictionary of the English Language 463 (4th ed. 2000). Plaintiff does not suggest any way in which an invention practicing the patent can store and organize music other than by database. Although any conventional database program can be used to catalogue and store the music data, '539 pat., col. 6, lns. 50-52, it is inherent in the claim that the music data be stored in some database. Therefore, the term should be construed to make this clear.

Finally, defendants contend that both the music data and associated category flags must be stored in compressed form. The claim language is ambiguous regarding whether "compressed data" refers to both music selections and associated category flags or to only music selections. '539 pat., col. 15, lns. 48-50; '886 pat., col. 27, lns. 54-56. Nonetheless, the specification is clear that the data compression limitation refers to the music data or

9

music selections.  In discussing the background of the invention, the specification explains

that the invention was intended to "take[] advantage of the latest in music data compression

. . . ."  '539 pat., col. 1, lns. 55-56.  In explaining how data can be compressed the

specification refers only to the compression of music data.  Id. col. 2, lns. 37-40 ("The music

is preferably compressed using MPEG3 and a standard sound card, typically having high-

fidelity characteristics is used to playback the decompressed music.").  Moreover, the

specification explains that music will be compressed separately from the loading of category

flags.  Id. col. 2, lns. 42-44 ("Compression of the music, as well as loading of appropriate

category flags . . . .").  Although the claim language and specification limit the manner in

which music data can be stored, that is, in a compressed form, they do not place the same

limitation on storing category flags.  Therefore, "compressed data" refers only to music

selections and not to category flags.


3.  Category flags

        Although the parties asked the court to construe "associated category flags," it is

appropriate to construe "category flags."  Some of the patents refer to "associated category

flags," '283 pat., col. 213, ln. 7, while others refer to "category flags associated," '471 pat.,

col. 29, ln. 36.  I conclude that the term "category flags" and related terms that are intended

to have the same meaning, including "category markers" as used in claims 1, 2 and 10 of the

'283 patent, claims 1, 2, 9, 10 and 15 of the '539 patent and claims 1 and 35 of the '471 patent mean **identifiers associated with a media/data selection, where each identifier represents a predetermined characteristic of the selection, such as title, artist, music style, etc.**

Although the parties agree that category flags are identifiers, they disagree about whether such flags are "database" identifiers.  The claim language does not use the term "database identifiers," and the specification refers regularly to categories or category flags appended to or associated with each song, '539 pat., col. 2, lns. 36, 43 and col. 7, ln. 54.  Nevertheless, defendants contend that category flags are synonymous with database identifiers because of one description in the specification:

> It is specifically noted that category information is provided by the service provider [and] appended to each song in the database.  The accessing of songs having such data appended thereto occurs according to applicant's unique graphical user interface based upon provider categories.  The association of various *database identifiers* to each song is implemented using conventional database programs such as the above described Microsoft Access® 2.0.  The association of category objects to song data should be conventional to those of ordinary skill.

'539 pat., col. 12, lns. 27-36.  (Emphasis added).  Defendants contend that because both category flags and database identifiers are associated with each song, category flags must be database identifiers.  Defendants are incorrect.  At most, the association of both terms with songs is a tenuous connection between the separate terms.  Without a clear indication that the inventors intended to limit the term, such a connection does not support a construction

11

of category flags that limits the term to database identifiers.  <u>CCS Fitness</u>, 288 F.3d at 1366

(when claim recites general structure without limiting structure to specific subset, claim term

should be construed to cover all types of that structure unless patentee acted as own

lexicographer and clearly set forth definition of disputed claim term in specification).

Plaintiff contends that the characteristic a category flag represents does not have to

be predetermined because either a service provider or a user can define characteristics.   This

is not a persuasive argument.   Requiring predetermination of the characteristic does not

prevent either a service provider or a user from defining characteristics.  More to the point,

both the specification and the claims themselves refer to predetermined categories.  '539

pat., col. 2, ln. 2; col. 15, ln. 54.  A song cannot have a category flag associated with it unless

there is a category coinciding with the flag.   Predetermining the characteristics that a

category flag represents means that sometime before a song receives a specific category flag,

the characteristic that the flag represents must be defined.  For example, if there is no music

type category, a song cannot have an associated music type category flag.   Therefore,

describing the characteristic a category flag represents as a predefined characteristic accords

with the way in which the claimed invention works and its purpose.  '539 pat., col. 2, lns.

1-4 ("[The invention] enables customized playback of music having a variety of

predetermined categories . . . .   Music is played back in any desired order based upon those

categories . . . .").

B. <u>Disputed Terms in the '539 Patent</u>

1. <u>Database</u>

I conclude that the term "database" as used in claim 15 of the '539 patent does not need construction because its plain and ordinary meaning is easily discernible from the claim language. The parties' proposed constructions reflect nothing more than different definitions for a simple term, with plaintiff's construction being vague and defendants' overly limited. Choosing either construction is not required. The term is clear and nothing in the claim language or the specification necessitates a special definition. Therefore, the plain and ordinary meaning controls. <u>Northern Telecom Ltd. v. Samsung Electrics Co.</u>, 215 F.3d 1281, 1295 (Fed. Cir. 2000).

2. <u>Processor</u>

I conclude that the term "processor" as used in claim 1 of the '539 patent does not need construction in light of the construction of other claim terms and because its plain and ordinary meaning is easily discernible from the claim language. The claim language regarding "processor" states, "a processor that retrieves selections and the associated category flags from the storage device based upon user selection of predetermined of the categories[.]" '539 pat., col. 15, lns. 51-53. The parties' dispute regarding "processor" centers on how "storage device" and "category flags" are construed. Because I have already construed those

13

terms there is no need to address them again.   Moreover, the remainder of the claim language is clear and nothing in the claim language or the specification establishes the need for a special definition; therefore, the plain and ordinary meaning controls.   Northern Telecom Ltd., 215 F.3d at 1295.


3.   When a predetermined of the category buttons is activated, music selections having category flags matching the predetermined category of a respective of the buttons are selected and listed on the display [sic]

I conclude that the term "when a predetermined of the category buttons is activated, music selections having category flags matching the predetermined category of a respective of the buttons are selected and listed on the display" as used in claims 1 and 15 of the '539 patent means **when a category button matching a category flag is activated, one or more music selections that have that category flag are selected and listed on the display**.   The parties again dispute the construction of "category flag," but I have already construed that term and will not revisit it.   Defendants contend that the data be selected from "a single database," but I have determined that the invention permits one or more storage devices and if there is more than one storage device there would have to be more than one database.   Therefore, defendants' contention fails in light of the construction of "a storage device."

14

The single new dispute is whether the language encompasses a single music selection that can be selected and displayed.  Defendants contend that the claim language's reference to "music selection<u>s</u>" in the plural limits the invention to selecting at least two music selections.  However, the claim language reference to music selections does not provide such a limitation.  In fact, such a limitation would be nonsensical when considered in context of the invention's purpose.  <u>Versa Corp. v. Ag-Bag International Ltd.</u>, 392 F.3d 1325, 1330 (Fed. Cir. 2004) ("[I]n context, the plural can describe a universe ranging from one to some higher number, rather than requiring more than one item.") (citation omitted).   The invention is intended to provide "fully customize[d] playback of music according to a variety of parameters including categories of music."  '539 pat., col. 1,  lns. 58-60; col. 2, ln. 1.  Defendants' contention leads to a nonsensical result:  when only one music selection had the category flag matching the category button the user activated, no selection would be displayed and the user would be prevented from having a fully customized playback of the stored music.  Therefore, the term should not be limited to requiring the system's selection and display of at least two music selections.

4.  <u>Receiving the compressed data from a remote source over a network for download into the storage device</u>

I conclude that the term "receiving the compressed data from a remote source over

a network for download into the storage device" as used in claim 1 of the '539 patent means **receiving the compressed data from a remote source over a network for transfer into the storage device where the data will be retained for later access**.  Although the parties dispute the entire quoted phrase, it is clear that their actual dispute centers on the phrase "for download into the storage device."  Defendants contend that compressed data that is streamed and retained transiently cannot be considered data downloaded into the storage device because downloading requires retention of the data for later access.  Plaintiff contends that the word download should retain its ordinary and plain meaning.  The difficulty with plaintiff's contention is that "to download" can have a broad or a narrow ordinary and plain meaning.  See, e.g., American Heritage Dictionary, at 541 ("To transfer (data or programs) from a server or host computer to one's own computer or device."); Merrian-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/downloading (last visited Sept. 24, 2008) ("to transfer (as data or files) from a usually large computer to the memory of another device (as a smaller computer).").  In either instance it is clear that downloading refers to the transfer of data from one location to another.  It is unclear, however, whether data that is not preserved for later use or retrieval can be considered downloaded data.  Therefore, leaving the construction of "download" to its plain and ordinary meaning would leave the term ambiguous.

        In support of their contention, defendants cite Finisar Corp. v. DirecTV Group, Inc.,

16

523 F.3d 1323 (Fed. Cir. 2008), a case in which the Court of Appeals for the Federal Circuit addressed a similar issue.  The district court had construed "downloading into a memory storage device" to mean "the data filter transfers into a memory storage device the data packets specified in the filter data."  Id. at 1331.  The Federal Circuit rejected the district court's construction and construed the term to mean "transferring the desired data into a device capable of saving it for later access" because "'downloading into a memory storage device' requires more than mere *transfer* of data, but *retention* as well."  Id. (emphasis in original).  The Federal Circuit explained that "fleeting or transient retention does not qualify as the kind of downloading defined by these claims. . . . [T]he '505 patent distinguishes fairly clearly between buffering and downloading . . . .  Thus, "downloading" as used in the patent requires something more than just transient retention of data."  Id. at 1332.

In the present case, defendants contend that the "kind" of downloading to which the '539 patent refers is like the downloading referred to in the patent in Finisar and cannot include buffering because the storage device cannot act as a buffer.  (In the field of computers, a "buffer" is "a computer storage area that *temporarily* holds data being transferred from one device to another . . . ."  Webster's New World College Dictionary 191 (4th ed. 2001) (emphasis added).)  Their view is that the storage device does not act as a buffer, as explained in the specification:  "[t]he song data, therefore, resides in the center . . . .  The categories appended to each song as part of the database program also reside in the center's

hard drive at this time. . . .  If downloading of song data is completed successfully, the data becomes resident on the center's disc drive or other high-volume random access memory storage unit." '539 pat., col. 7, lns. 52-56; Col. 7, lns. 66-67-Col. 8, ln. 1.  Defendants argue that the specification's use of the word "reside" makes it clear that music data is  held in the center's storage device more than temporarily or transiently.

      I find defendants' contention persuasive.  For music data to "reside" or become "resident" on a storage device, retention of the data cannot be transient; instead, it must be retained for later access.  Limiting "download" to the kind of downloading that is not merely buffered finds further support in the specification's explanation of using the invention "to handle images and full motion video[.]" '539 pat., col. 14, lns. 53-54.  In that section, the specification explains that

> A sufficiently large hard-drive can be used to store a large database of movies and/or other video data.  Where storage is problematic, one example contemplates that the center's processor can interface with a commercially available multi-disc CD-ROM or DVD (Digital Versatile/Video Disc) drive. . . .  The raw video data can be retrieved as needed from the play-ready optical discs according to a request by the user entered via the MyData database which carries the underlying video category data associated with each video title in its list.

Id. col. 15, lns. 1-10.  Storage of movies or video data would not be "problematic" if downloading the data permitted fleeting or transient retention as opposed to retention for later access.  Moreover, it would be unnecessary to download the data into a *storage* device if the data were not being *stored* for later access.  Therefore, as in Finisar, the term

18

"download" must involve both the transfer of data and retention of the data for later access as opposed to transfer and transient retention.

5.  Predetermined characteristics entered by a user

I conclude that the term "predetermined characteristics entered by a user" as used in claim 15 of the '539 patent does not need construction because its plain and ordinary meaning is easily discernible from the claim language.  Moreover, the parties' dispute over the term centers on the use of "predetermined characteristics," which I have already addressed in the context of construing "category flags."  Without reproducing the entire analysis regarding "predetermined characteristics," it is worth repeating that a user could not search and play back music in a customized manner unless the characteristics associated with each category are determined *before* the user initiates such a search.  Therefore, the claim term needs no further construction.

C.  Disputed Terms in the '471 Patent

1.  A storage device which stores a plurality of media/data selections, each of said media/data selections having associated therewith at least one of a plurality of category flags and at least one of a plurality of sub-category flags

Although the parties request construction of the entire phrase "a storage device which

stores a plurality of media/data selections, each of said media/data selections having associated therewith at least one of a plurality of category flags and at least one of a plurality of sub-category flags," their dispute centers on the construction of "sub-category flags." There is no need to construe the entire phrase because the parties' dispute can be resolved by construing "sub-category flags" alone.  Furthermore, the other disputes regarding the entire phrase involve issues that have already been addressed, such as how to construe "category flag" and whether a single database is involved.  I conclude that the term "sub-category flags" as used in claim 1 of the '471 patent means **a secondary level of category flags**.

Plaintiff contends that "sub" as used in "sub-category flag" is meant to describe the order in which category flags may be selected, that it does not imply a subordinate position and that "sub" could be replaced with "second."  Defendants disagree, arguing persuasively that "sub" means a secondary level.  Plaintiff's proposed construction cannot be correct because it would make the claim language nonsensical.  If "sub" refers to the order in which category flags may be selected, and not the hierarchical position of a category flag, the claim language would be redundant in stating that a storage device stores category flags and sub-category flags; both terms would refer to the same component.  Plaintiff's version would amount to saying that a storage device stores category flags and more category flags.

The specification gives additional support to the conclusion that "sub" means a

20

secondary level.  Fig. 13 and Fig. 16 from the '471 patent show the invention's use of main

categories and sub-categories in a hierarchical manner:

> The illustrated window **382** in FIG. 13 shows some of the possible categories that can
> be organized . . . .  "Other category" buttons **400** are provided for future expansion.
> If one of the main category buttons in the window **382** is selected . . . then the
> routine determines whether a single or double "click" of the user interface has
> occurred.

'471 pat., col. 10, lns. 53-61.



FIG. 13

[I]t is noted that pressing the Category button . . . twice (e.g., "double click") . . . causes the particular Category button to display Screen3 **480** (FIG.16). Screen3 provides a window **482** with sub-categories that fall *under* a particular music category. The sub-categories are listed as individual buttons **484**. These categories can comprise a variety of parameters such as time frame, special occasions, type of music, etc. In addition, the basic categories such as speed or "energy" can be included as sub-categories under a particular category.



FIG. 16

*Id.* col. 11, lns. 53-64. (Emphasis added). The specification makes it clear that sub-

categories fall *under* main categories and not that they come after main categories. The figures and specification establish that main categories are broad characteristics that could encompass a large number of music selections, whereas sub-categories are narrow characteristics. It is true, as plaintiff points out, that some main categories can be sub-categories, such as "energy," but just because main categories can be sub-categories does not mean that all sub-categories are also main categories. The two figures show that most of the sub-categories, as pointed to by number 484 in Fig. 16, are not main categories, as pointed to by number 482 in Fig. 13, and vice versa. Therefore, the specification and figures in the '471 patent provide ample support for the conclusion that "sub-category flags" are a secondary level of category flags.

2. <u>A selector responsive to user activation of at least one of said category selection buttons and at least one of said sub-category buttons which automatically selects for retrieval from said storage device, and automatically generates, a playlist of those of said media/data selections having the user selected category and sub-category combinations</u>

I conclude that the entire phrase "a selector responsive to user activation of at least one of said category selection buttons and at least one of said sub-category buttons which automatically selects for retrieval from said storage device, and automatically generates, a playlist of those of said media/data selections having the user selected category and sub-

category combinations" as used in claim 1 of the '471 patent as well as the similar phrase as used in claim 35 of the '471 patent does not need construction in light of the construction of other claim terms and because its plain and ordinary meaning is easily discernible from the claim language.  Several of the issues related to the disputed phrase have already been addressed, such as whether the invention requires a single storage device to store data, and need not be analyzed again.  Besides those previously disputed issues, defendants contend that "a selector" is "a processor."  The specification is silent on the definition of "selector."  The claim language explains what a selector does, including retrieving specific media/data selections.  '471 pat., col. 27, lns. 45-51.  The question is whether a selector must be a processor because it retrieves data selections.

Although some of the other patents in suit refer to a processor that retrieves music selections, '539 pat., col. 15, lns. 51-53 ("a processor that retrieves selections and the associated category flags from the storage device based upon user selection of predetermined of the categories"), the '471 patent does not include such a processor.  Instead, the '471 patent appears to combine into a selector the functions associated with what the '539 patent refers to as a processor and what the '539 patent refers to as a "graphical user interface display," which displays specific music selections in accordance with an activated category button.  '539 pat., col. 15, lns. 60-67.  Moreover, the '471 patent's specification explains that the invention's central processing unit, which is the "heart" of the media organizer and

24

entertainment center, '471 pat., col. 6, lns. 65-66, uses software that includes a "search and play interface," id. col. 18, ln. 1.  Limiting "selector" to mean "processor" would not be correct in light of the selector's functions.  The term may also be construed to be a user interface.  Instead, selector should remain defined by its functions, in accordance with the claim language.

A second issue is whether a "selector" must only "be capable of responding" or whether it must be "responsive."  Although plaintiff raises this "capable of" argument with various terms, it is uniformly unpersuasive.  Plaintiff's "capable of" argument is based on its contention that the patents in suit claim structures or apparatuses and not methods.  Therefore, it reasons, proper construction of claim terms need provide only for a claimed structure "capable of" doing whatever the claim language says.  As I understand plaintiff's approach, the '471 patent claims a media/data selection organizer and entertainment system made up of the following structures:  a storage device, a user interface, a selector and a playback device.  So long as a device contains those structures and those structures are merely capable of doing what the claim language says, the device would practice the claimed invention.  For example, a file cabinet containing folders filed with blank paper would be a storage device under claim 1 of the '471 patent because it is capable of storing media/data selections, or a person could be a selector because a person is capable of responding to the activation of a button and retrieving data from a storage device such as a file cabinet.  In

25

fact, the patent requires more than the capability to store or the capability to respond. Clearly, the inventors of the '471 patent did not invent selectors or storage devices or playback devices. The patent invented what the inventors considered novel ways in which to use those structures to create a media/data selection organizer and entertainment system that permits customized storage and playback of data. The term "selector" should not be construed broadly to mean "a selector capable of responding."

3.  <u>A media/data selection categorizer which allows a user of the system to associate with said media/data selection one or more of said category flags and to store said one or more category flags with their associated media/data selections</u>

I conclude that the entire phrase "a media/data selection categorizer which allows a user of the system to associate with said media/data selection one or more of said category flags and to store said one or more category flags with their associated media/data selections" as used in claim 35 of the '471 patent does not need construction in light of the construction of other claim terms and because its plain and ordinary meaning is easily discernible from the claim language. The parties' proposed constructions are a mere rewording of the claim language, which is clear enough without any alterations. Moreover, the disputes over the phrase involve terms that have already been construed, such as "category flags." Therefore, there is no need to construe the phrase further.

ORDER

IT IS ORDERED that:

1.  The disputed claim terms common to United States Patents Nos. 5,969,283; 6,232,539; 6,953,886; and 7,205,471 are construed as follows:

- "a storage device" as used in claim 1 of all four patents means **one or more devices, such as a high-volume hard drive or other storage media, for storing electronic data**;

- "storing compressed data defining a plurality of individual music selections and associated category flags," and the similar terms that should have a consistent meaning, as used in claim 1 of '283 patent, claims 1 and 15 of the '539 patent and claim 1 of the '886 patent means **storing one or more compressed music selections and associated category flags in a database**;

- "category flags," and its related terms that should have a consistent meaning, including "category markers," as used in claims 1, 2 and 10 of the '283 patent, claims 1, 2, 9, 10 and 15 of the '539 patent and claims 1 and 35 of the '471 patent means **identifiers associated with a media/data selection, where each identifier represents a predetermined characteristic of the selection, such as title, artist, music style, etc.**

2.  The disputed claim terms of United States Patent No. 6,232,539 are construed

as follows:

- "when a predetermined of the category buttons is activated, music selections having category flags matching the predetermined category of a respective of the buttons are selected and listed on the display" as used in claims 1 and 15 of the '539 patent means **when a category button matching a category flag is activated, one or more music selections that have that category flag are selected and listed on the display**;

- "receiving the compressed data from a remote source over a network for download into the storage device" as used in claim 1 of the '539 patent means **receiving the compressed data from a remote source over a network for transfer into the storage device where the data will be retained for later access**

3.  The disputed claim terms of United States Patent No. 7,205,471 are construed as follows:

- "sub-category flags" as used in claim 1 of the '471 patent means **a secondary level of category flags**.

4.  The other disputed claim terms addressed in this opinion should retain their plain and ordinary meaning.

5.  Plaintiff's motion for leave to file sur-reply, dkt. #144, is DENIED.

Entered this 30th day of September, 2008.

                              BY THE COURT:


                              /s/
                              _____
                              BARBARA B. CRABB
                              District Judge